The **CHARTER OAK FIRE INSURANCE COMPANY,** Plaintiff,

v.

**FLEET BUILDING MAINTENANCE, INC., Skanska USA Building, Inc., Aleksandr Lashkov and Victoria Lashkov, Defendants.**

No. 07–CV–2196 (RRM)(CLP).

United States District Court, E.D. New York.

Sept. 30, 2009.

Jeremy M. Sokop, Stephen M. Lazare, Lazare Potter Giacovas & Kranjac LLP, New York, NY, for Plaintiff.

Andrew P. Saulitis, Andrew P. Saulitis, P.C., New York, NY, Michael S. Bubb, Bubb Grogan & Cocca, LLP, Morristown, NJ, for Defendants.

### MEMORANDUM & ORDER

MAUSKOPF, District Judge.

Plaintiff insurance carrier, Charter Oak Fire Insurance Company ("Charter Oak"),

brings this declaratory judgment action against Defendants Fleet Building Maintenance Inc. ("Fleet"), Skanska USA Building, Inc. ("Skanska"), and Aleksandr Lashkov and Victoria Lashkov (collectively, the "Lashkovs"). Pursuant to the terms of its commercial automobile policy with Fleet, Charter Oak moves for summary judgment, seeking a declaration that it is without obligation to defend or indemnify Fleet against Skanska's third-party indemnity/contribution claims, which third-party claims have been asserted against Fleet in connection with a Kings County personal injury suit (No. 75260/07) filed by the Lashkovs. For the reasons below, Charter Oak's motion is GRANTED, and Fleet's related Counterclaims against Charter Oak are DISMISSED.

## PROCEDURAL HISTORY

On May 30, 2007, Charter Oak, a Connecticut-based entity, filed the instant suit pursuant to this Court's diversity jurisdiction, pursuant to 28 U.S.C. § 1332. Thereafter, on November 7, 2007, Fleet, a New York corporation, filed its Answer and Counterclaims. On November 21, 2008, Charter Oak filed the instant summary judgment motion, to which Fleet has failed to timely respond.

On May 29, 2009, having had no response from Fleet, this Court issued an Order to Show Cause why, pursuant to Federal Rule of Civil Procedure 56(e), Charter Oak's summary judgment motion for declaratory relief should not be granted as unopposed and why Fleet's counterclaims should not be dismissed for failure to prosecute. By filings dated June 5, 2009, Fleet's counsel informed this Court that Fleet was a defunct entity, and that

its principal, Mr. Richard B. Tortorrelli, had been and remains incarcerated on unrelated criminal charges. (See Docket Nos. 50, 51). Accordingly, Fleet's counsel requested a two-week extension to reestablish client contact.

On July 7, 2009, more than one month after Fleet's request for additional time, Fleet's counsel still failed to provide any update concerning his attempts to reestablish client contact. Over Charter Oak's objections, this Court, acting *sua sponte*, granted Fleet an additional extension, until July 10, 2009, by which to reestablish client contact and to determine whether or not Fleet intended to defend the instant action or to prosecute its counterclaims. Fleet's counsel was on notice that if a timely response was not made, Charter Oak's motion would be deemed unopposed and Fleet's counterclaims would be subject to summary dismissal.

As of September 30, 2009, Fleet has failed to notify this Court of its intentions with respect to this action. As such, Charter Oak's motion is deemed unopposed.

## FACTUAL BACKGROUND

In or about February 2002, pursuant to a Master Labor Agreement, and as memorialized by a February 1, 2002 Purchase Order (the "Skanska–Fleet Purchase Order"), Skanska hired from Fleet union labor to perform construction work at the Port Authority Bus Terminal in New York City. Pursuant to that arrangement and the express terms of the Skanska–Fleet Purchase Order, Fleet contracted and agreed to indemnify Skanska for damages resulting from the negligence of Fleet's employees.[1]

---

1. In connection with this dispute, the propriety of premising the underlying services contract between Skanska and Fleet, at least in part, on what is ostensibly a purchase order

for the sale of goods, has not been placed at issue. This Court therefore assumes that there is a viable indemnification claim as between Skanska and Fleet, sufficient to give

## A. *The April 2004 Accident*

On April 24, 2004, it is alleged that Alexksandr Lashkov was injured when Fleet employee James Nisivoccia crashed a Skanska vehicle into the scaffolding upon which Lashkov was working. The scaffolding collapsed and, as a result, Lashkov apparently sustained serious bodily injuries. Lashkov was subsequently removed from the scene by emergency ambulance. In connection with that April 2004 accident, Lashkov commenced a personal injury lawsuit against Skanska in Kings County Supreme Court on November 19, 2004.

On March 9, 2007, Skanska commenced a third-party action against Fleet, seeking indemnification and/or contribution in connection with Lashkov's lawsuit. Skanska alleges that Lashkov's injuries were directly attributable to Fleet's acts or omission in the operation of the vehicle at the construction site.

On April 2, 2007, approximately three years after the underlying accident, and in response to being sued by Skanska for indemnity and contribution under the terms of the Skanska–Fleet Purchase Order, Fleet filed its initial claim notice with Charter Oak, its insurer, requesting defense and indemnity coverage.

Three days later, on April 5, 2007, Charter Oak denied Fleet's claim as untimely.

## B. *The Policy & Notice Timing*

At issue here is a commercial automobile policy (No. I–810–4859W371–COF–03), issued by Charter Oak to Fleet, and effective for the period August 16, 2003 through August 16, 2004.[2] With respect to timely notice of potential Policy claims, the Policy requires, in relevant part, as follows:

DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS

> a. In the event of "accident," claim, "suit" or "loss," you or someone on your behalf must give us or our authorized representative notice as soon as reasonably possible of the "accident" or "loss".

In its supporting 56.1 Statement of Fact, Charter Oak claims that Fleet's notice of claim, filed on or about April 2, 2007, was the first notice it had ever received of the April 24, 2004 accident.

Don L. Candee, Charter Oak's claim representative for this matter, submits a sworn affidavit testifying to his conversations with Fleet principal Richard Tortorrelli and appends contemporaneous electronic notes of that conversation in further support of Charter Oak's motion.[3]   Both

---

rise to the subsequent insurance dispute between Fleet and Charter Oak. In any event, as the governing nature of the Skanska Purchase Order is not immediately relevant to the instant insurance coverage action, the Court need not, and does not, address the issue.

2. The Court notes that "Shanska [sic] USA Building, Inc." is designated as an "additional insured" under Fleet's Policy.

3. Candee affirms that the electronic notes of his conversation with Tortorrelli were made by him in furtherance of his claim investigation, were approximately contemporaneous with his conversation with Tortorrelli, and were created and maintained as a business record in the ordinary course of Charter

Oak's business. As such, the documents satisfy the business records exception to the hearsay rule as set forth in Federal Rule of Evidence 803(6). Additionally, the Court deems Tortorrelli's statements, as recorded in Candee's electronic notes, admissible as an admission of a party opponent pursuant to Federal Rule of Evidence 801(d)(2). Having failed to oppose or otherwise rebut Charter Oak's ample and sufficient supporting evidence, the Court accepts Charter Oak's version of the facts as true for summary judgment purposes. *See Melendez v. Monroe Coll.*, No. 04–CV–2266, 2006 WL 2882568, at *2 (E.D.N.Y. Oct. 6, 2006).

Candee's affidavit testimony and his notes reflect that Fleet had been aware of the accident since 2004. Indeed, according to Candee's notes, Tortorrelli represented that he first became aware of the accident on the very day it occurred, having been personally informed by James Nisivoccia, the Fleet driver involved. On the basis of Tortorrelli's alleged timely knowledge of the 2004 accident, and his failure to provide Charter Oak with notice earlier than April 2007, an approximately three-year delay, Charter Oak denied Fleet's claim for Policy coverage, citing Fleet's failure to comply with the Policy's notification requirements. As stated above, Charter Oak then commenced this declaratory judgment action to vindicate its denial of coverage under the Policy.

## SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides for the grant of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" for these purposes when it "might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party

seeking summary judgment bears the burden of demonstrating that no issue as to any material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

■ Pursuant to Federal Rule of Civil Procedure 56(e), if, as here, the motion is unopposed, "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. Pro. 56(e). However, "Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vermont Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir.2004); *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir.2001) ("[W]hen a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial ..."); *Ramnarain v. City of New York*, 474 F.Supp.2d 443, 446 (E.D.N.Y.2007) (same).

## DISCUSSION

### I.

### *Fleet's Untimely Notice of Claim*[4]

In moving for summary judgment, Charter Oak argues that it without obligation to defend or indemnify Fleet, in light of: (a) Fleet's failure to provide timely notice of

---

**4.** Charter Oak fails to direct this Court to a "governing law provision" in the Policy. Nonetheless, and despite being a Connecticut entity, Charter Oak's legal arguments for summary judgment in this case are predicated exclusively upon New York law. Thus, although governing law is not addressed by the parties, the Policy appears to have issued from Albany, New York to Fleet, a New York-

based entity, and contains at least certain addendum provisions required exclusively by New York law (though this Court notes that certain of the Policy's provisions not at issue here are also clearly governed by New Jersey law). Accordingly, this Court holds that the Policy, and its application in this case, are governed by New York law.

the accident, as expressly required under the Policy terms, and (b) the lack of any reasonable excuse for such untimely notification. For both reasons, this Court agrees.

■ Generally, an insurance policy requiring timely notice of an accident compels that notice be provided within a reasonable amount of time after the incident given the totality of the circumstances. *Green Door Realty Corp. v. TIG Insurance Company*, 329 F.3d 282, 287 (2d Cir. 2003). Without timely notice, the insurer has no duty to indemnify or defend a suit brought against the insured, regardless of whether or how the insurer has been prejudiced by the delay. *See Unigard Sec. Ins. Co., Inc. v. N. River Ins. Co.*, 79 N.Y.2d 576, 581, 584 N.Y.S.2d 290, 594 N.E.2d 571 (1992) ("It is settled New York law that the notice provision for a primary insurer operates as a condition precedent and that the insurer need not show prejudice to rely on the defense of late notice."); *see also Nouveau Elevator Indus., Inc. v. Cont'l Cas. Ins. Co.*, No. 05–cv–0813, 2006 WL 1720429, at *3 (E.D.N.Y. June 21, 2006); *Garfield Slope Hous. Corp. v. Pub. Svc. Mut. Ins. Co.*, 973 F.Supp. 326, 333 (E.D.N.Y.1997).[5]

■ In this case, there is no dispute that the relevant accident occurred in April 2004, yet the unrebutted summary judgment record indicates that Fleet was aware of the accident on the very day that it occurred and failed to notify Charter Oak of the potential Policy claim until April 2007, a three-year lapse. Absent excuse, this Court agrees with those courts that have held that delays far less than three-years to be unreasonable as a matter of law. *See, e.g., 1329 Realty LLC v. U.S. Liab. Ins. Group*, No. 06–CV–3363, 2006 WL 3150823, at *3 (E.D.N.Y. Nov. 3, 2006) (holding that three months after service of legal action was unreasonable); *Republic New York Corp. v. Amer. Home Assur. Co.*, 125 A.D.2d 247, 248, 509 N.Y.S.2d 339 (1st Dep't 1986) (holding that waiting 45 days after an occurrence was unreasonable).

■ Any suggestion that Fleet's notice obligation was triggered only upon service of the third-party summons and complaint,[6] rather than upon the initial accident date, is unavailing. New York cases interpreting "notification of accident" provisions, as here, consistently hold that the duty to notify is triggered when, " 'from information available relative to the accident, an insured could glean a reasonable possibility of the policy's involvement.' " *Figueroa v. Utica Nat. Ins. Group*, 16 A.D.3d 616, 616–17, 792 N.Y.S.2d 556 (2nd Dep't 2005) (quoting *Paramount Ins. Co. v. Rosedale Gardens*, 293 A.D.2d 235, 239–40, 743 N.Y.S.2d 59

---

5. This Court notes that, effective January 17, 2009, New York Insurance Law § 3420 has been amended. Pursuant to that recent amendment, in cases involving a purported delay of two years or less, the burden is upon the insurer to establish material prejudice with respect to its ability to investigate or defend. *See* N.Y. Ins. Law § 3420(a)(5),(a)(6)(c) (McKinney 2009). This amendment, however, applies to actions arising from insurance contracts made or delivered in New York after January 17, 2009, and is therefore inapplicable to the pre-amendment Policy at issue here. *See* 2008 N.Y. Sess. Law News of N.Y. Ch. 388 (S.8610), at

*8 (McKinney 2008). Even if such amendment were applicable, in cases such as this, where the purported delay in notification is greater than two years, it is the insured's burden to establish that the insurer has not been materially prejudiced, N.Y. Ins. Law § 3420(a)(6)(c)(2)(A), a burden that Fleet has failed to satisfy in this case.

6. There is nothing in the record to suggest that Fleet delayed in notifying Charter Oak that a third-party indemnity and contribution action had been commenced.

(1st Dep't 2002)). In sum, under provisions of this type, the insured's obligation to notify the carrier of a potential policy claim runs from the date of any accident that might reasonably be covered under the policy, and an insured need not wait— in fact, *must not wait*—until commencement of legal action to inform its carrier of a potential claim. This very precept was well-articulated in the New York Court of Appeals' recent decision in *Sorbara Constr. Corp. v. AIU Ins. Co.*, 11 N.Y.3d 805, 806, 868 N.Y.S.2d 573, 897 N.E.2d 1054 (2008). There, the Court of Appeals, interpreting a policy that, as here, required the insured to provide notice of an "occurrence" "as soon as practicable," held that the plaintiff insured, while being aware of the accident, unreasonably delayed notifying their insurance carrier for several years, and only did so upon commencement of legal action. *Id.* at 807, 868 N.Y.S.2d 573, 897 N.E.2d 1054; *see also Green Door Realty*, 329 F.3d at 287 (holding that the insured's prompt report of a claim to the insurer did not excuse the insured's three-year wait in reporting the underlying accident); *Security Mut. Ins. Co. of New York v. Acker–Fitzsimons Corp.*, 31 N.Y.2d 436, 441–42, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972) (same). The *Sorbara* Court's reasons for relieving the insurers' coverage obligations on the basis of untimely notice apply with equal force here.

Finding that Fleet's duty to provide timely notice runs from the date of any potentially covered accident raises the question: should Fleet have known that the April 2004 accident was of the type covered by its Charter Oak policy? On balance, this Court finds no basis in the record for any genuine dispute on that issue. In this case, the reasonable possibility of the Policy's involvement should have been apparent to Fleet based on the fact that: (i) one of its own employees was

driving the vehicle that caused Lashkov's injuries; (ii) Lashkov's injuries were sufficiently serious to require emergency response; and (iii) despite the fact that the culprit vehicle was leased or owned by Skanska, its operation by a Fleet employee, if negligent, could give rise to Fleet's indemnification and/or contribution liability under the terms of the Skanska–Fleet Purchase Order. At the very least, those facts warranted some type of follow up. *See White by White v. City of New York*, 81 N.Y.2d 955, 958, 598 N.Y.S.2d 759, 615 N.E.2d 216 (1993) (finding seriousness of injury and indicia of negligence warranted reasonable investigation). Accordingly, had Fleet fulfilled its basic obligation to make reasonable inquiry into the facts and circumstances of the April 2004 accident, the need to notify Charter Oak of a potential claim in or about April 2004 would have been obvious. *See Great Canal Realty Corp. v. Seneca Ins. Co., Inc.*, 5 N.Y.3d 742, 743–44, 800 N.Y.S.2d 521, 833 N.E.2d 1196 (2005); *White by White*, 81 N.Y.2d at 958, 598 N.Y.S.2d 759, 615 N.E.2d 216 (stating, "where a reasonable person could envision liability, that person has a duty to make some inquiry").

Finally, not only does Fleet's lack of investigation fail to toll its notice obligation, but it also vitiates any defense predicated upon a belief in non-liability. *See Sec. Mut. Ins.*, 31 N.Y.2d at 443, 340 N.Y.S.2d 902, 293 N.E.2d 76. While an insured's good-faith belief in non-liability may, in some cases, provide an excuse for notification delay, see *id.*, determining whether that belief was reasonable requires examination of the circumstances surrounding the occurrence, including whether the insured took any steps to investigate the question of their liability. *See Great Canal*, 5 N.Y.3d at 743–44, 800 N.Y.S.2d 521, 833 N.E.2d 1196. Fleet's

failure in this regard would therefore preclude such defense were it raised.

## II.

### Fleet's Counterclaims[7]

 Pursuant to various provision of the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen.Stat. §§ 38a–815 *et seq.* and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. §§ 42–110a *et seq.*, Fleet asserts Counterclaims against Charter Oak seeking (a) a declaration that Charter Oak is obligated to defend and indemnify it in connection with Skanska's third-party claims; (b) damages, including attorneys' fees, in connection with Fleet's defense of Skanska's third-party action; and (c) damages, including attorneys' fees, incurred in its defense of the instant declaratory judgment action. Because Charter Oak has established that Fleet breached its duty under the Policy to timely provide Charter Oak with notice of the accident, Charter Oak is without obligation to provide defense or indemnity coverage to Fleet. That fact alone vitiates Fleet's Counterclaims, all of which are predicated on Charter Oak's alleged breach of the Policy. In the alternative, Fleet's Counterclaims are properly dismissed for failure to prosecute. *See Maersk Line v. Phoenix Agro–Industrial Corp.*, No. 07–CV–3169, 2009 WL 1505281, at *5 (E.D.N.Y. May 27, 2009).

## CONCLUSION

For the foregoing reasons, Charter Oak's motion for summary judgment against Fleet is GRANTED. Fleet's

Counterclaims against Charter Oak are DISMISSED.

SO ORDERED.

---

7. Although Fleet does not contest Charter Oak's assumption that the relevant Policy provisions at issue are governed exclusively by New York law, it asserts Connecticut-based claims independent of the Policy for violations of CUIPA and CUTPA, solely by virtue of the fact that Charter Oak is a Connecticut-based insurer. The Court finds no inherent conflict in applying Connecticut law to Charter Oak's conduct in this case, although, for reasons stated in Point II, proper application of Connecticut law to Fleet's Counterclaims need not be determined.