**MT. HAWLEY INSURANCE COMPANY, Plaintiff,**

v.

**ABRAHAM LITTLE NECK DEVELOPMENT GROUP, INC., and Gilberto Diaz, Defendants.**

**No. 09–CV–3463 (ADS) (ARL).**

United States District Court, E.D. New York.

Nov. 21, 2011.

Kenney Shelton Liptak Nowak LLP, by: Timothy E. Delahunt, Esq., Of Counsel, Buffalo, NY, for Plaintiff.

Kirschenbaum & Kirschenbaum, P.C., by: Paul J. Tramontano, Esq., Tal Hirshberg, Esq., Of Counsel, Garden City, NY, for Abraham Little Neck Development Group, Inc.

Gacovino, Lake & Associates, P.C., by: Steven D. Gacovino, Esq., Of Counsel, Sayville, NY, for Gilberto Diaz.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case arises from alleged injuries sustained by defendant Gilberto Diaz ("Diaz") in a September 22, 2008 accident at the construction site of defendant Abraham Little Neck Development Group, Inc. ("Abraham Little Neck"), which is currently the subject of an action in the New York State Supreme Court, Suffolk County ("the underlying action"). At the time of Diaz's accident, Abraham Little Neck was insured by plaintiff Mt. Hawley Insurance Company ("Mt. Hawley" or "the Plaintiff"). Presently before the court is Mt. Hawley's motion for summary judgment seeking a declaration that it is not obligated to cover, defend, or indemnify any party in connection with the September 22, 2008 accident or the underlying action. For the following reasons, the motion is granted in part and denied in part.

## I. BACKGROUND

On September 22, 2008, defendant Gilberto Diaz was allegedly injured while working as an employee of non-party E. Anderson Enterprises ("Anderson"), on a construction project at 28 Tennis Court Road, Oyster Bay, New York ("the Oyster Bay project"). Defendant Abraham Little Neck Development Group, the general contractor for the Oyster Bay project, had hired Anderson as a subcontractor to perform certain framing work.

At the time of the accident, Abraham Little Neck was insured by the plaintiff, Mt. Hawley Insurance Company, under a commercial general liability policy issued to Abraham Little Neck for the time period of June 7, 2008 to June 7, 2009 ("the Policy"). The Policy provided coverage for bodily injury with a limit of $1 million per-occurrence and included two provisions relevant to the instant case. The first required Abraham Little Neck to provide Mt. Hawley "as soon as practicable" with notice of "an occurrence or an offense which may result in a claim" under the Policy ("the notice provision"). (Policy, Section IV(2), Delahunt Aff., Ex. 1.)

The second relevant provision set forth additional coverage conditions for contractors who utilize subcontractors, including the requirement that contractors "obtain hold harmless agreements from subcontractors indemnifying against all losses from the work performed for the insured by any and all subcontractors" ("the subcontractor insurance provision"). (Policy, Endorsement CGL 102A (09/05), Delahunt Aff., Ex. 1.) In accordance with the subcontractor insurance provision, Abraham Little Neck entered into a "Hold Harmless/Indemnity Agreement" with Anderson, which required Anderson to provide Abraham Little Neck with a current Certificate of Liability Insurance and a Worker's Compensation Certificate and for Anderson to indemnify Abraham Little Neck "from and against all losses, claims,

damages, penalties or expenses, including reasonable attorney's fees arising from bodily injury or death to any person and/or property damages including loss of use arising out of or in any way relating to the work performed or omission caused by the subcontractor...." (Hold Harmless/Indemnity Agreement, Delahunt Aff. Ex. 3.)

On November 14, 2008, Diaz's attorney, Scott J. Zlotolow, Esq., sent a letter notifying Abraham Little Neck that Diaz had been injured in an accident on the Oyster Bay project construction site on September 22, 2008, and that he had been retained to represent Diaz with regard to his injuries ("the November 14, 2008 letter"). (*See* Delahunt Aff., Ex. 4.) Zlotolow further requested that Abraham Little Neck forward the letter to its insurance carrier "in order that they may contact us immediately with a view towards an amicable adjustment herein" and stated that, "Failure to receive a response from you within two (2) weeks will necessitate our placing this matter into suit." (*Id.*)

On November 18, 2008, Thomas Abraham, President of Abraham Little Neck, replied to the November 14, 2008 letter, informing Zlotolow that Diaz was an employee of Anderson, not Abraham Little Neck, and that: (1) Diaz carried worker's compensation insurance; (2) Anderson provided Abraham Little Neck with certificates of liability and compensation insurance; and (3) Anderson signed the Hold Harmless Agreement ("the November 18, 2008 letter"). (*See* Delahunt Aff., Ex. 5.)

Thereafter, on January 30, 2009, Diaz commenced an action against Abraham Little Neck in the New York State Supreme Court, Suffolk County, seeking damages for his injuries ("the underlying action"). *See Diaz v. Abraham Little Neck Dev. Group, Inc.*, Index. No. 704/2009 (N.Y. Sup.Ct., Suffolk Cnty). The underlying action is still pending.

Although Diaz commenced the underlying action on January 30, 2009, Abraham Little Neck claims not to have received notice of the action until June 10, 2009. The same day it contends it received notice of the underlying action, Abraham Little Neck sent a letter to its insurance broker ("the June 10, 2009 letter") stating:

> Last November we got a letter from an attorney saying a Gilberto Diaz was hurt on our job [in Oyster Bay]. Mr. Diaz was employed by Eric Anderson Enterprises, our framing subcontractor. I wrote back a letter giving the attorney all of the information including the fact we have a hold harmless agreement from Mr. Anderson. I am sending you the attorney letter, along with a copy of our response, as well as a copy of our hold harmless agreement with Eric Anderson. An investigator called today asking if we had answered their summons (we never received), so I figured this is now a lawsuit and should advise our insurance company. I thought this was Eric's responsibility seeing as Mr. Diaz was employed by him.

(*See* Delahunt Aff., Ex. 6.)

Upon receipt of the June 10, 2009 letter, the insurance broker gathered additional information from Abraham Little Neck, and then forwarded all of the above correspondence to Mt. Hawley. Subsequently, on June 15, 2009, Mt. Hawley sent a letter to Abraham Little Neck in which it denied coverage to Abraham Little Neck, Diaz, and unnamed others based on their alleged non-compliance with the notice provision of the Policy. (See Delahunt Aff., Ex. 8.) In support of its decision to disclaim coverage, Mt. Hawley noted that despite the fact that Abraham Little Neck was aware of Diaz's accident on or before November 18, 2008, when Thomas Abraham sent a letter to Diaz's attorney, Mt. Hawley did not receive notice of the loss and claim

until June 12, 2009. In addition, Mt. Hawley reserved its right to deny coverage in the event it determined that Abraham Little Neck failed to comply with the subcontractor insurance provision in the Policy.

On August 10, 2010, Mt. Hawley commenced this action against Abraham Little Neck and Diaz, alleging that Abraham Little Neck breached the notice provision and subcontractor insurance provision of the Policy. On June 27, 2011, Mt. Hawley moved for summary judgment seeking a declaration that it has no obligation under the Policy to cover, defend or indemnify Abraham Little Neck or any other persons in connection with the September 22, 2008 accident or the underlying action. Although the complaint asserts causes of action for breach of the notice provision and the subcontractor insurance provision, Mt. Hawley seeks summary judgment based on Abraham Little Neck's alleged breach of the notice provision.

Before addressing the merits of Mt. Hawley's motion, the Court deems it prudent to address the fact that Mt. Hawley not only seeks a declaration with respect to its obligations as to defendants Abraham Little Neck and Diaz, but also seeks a declaration that it is not obligated to cover, defend, or indemnify "any other person" in connection with the September 22, 2008 accident or the underlying action. However, Mt. Hawley fails to identify the specific "other persons"; state what relationship these "other persons" might have to this action; or even name the "other persons" as defendants in this action. Thus, the request for a determination as to Mt. Hawley's obligations to individuals or entities that are not parties to this action is not properly before the Court.

The Court addresses separately below Mt. Hawley's motion for summary judgment as against Abraham Little Neck and Diaz.

## II. DISCUSSION

### A. Standard of Review—Fed. R. Civ. P. 56

It is well-settled that summary judgment under Fed.R.Civ.P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of establishing the absence of a genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" within the meaning of Fed.R.Civ.P. 56 when its resolution "might affect the outcome of the suit under the governing law." Id. at 248, 106 S.Ct. 2505. An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir.1995) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam), and Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir.1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). However, the nonmoving party cannot survive summary judgment by cast-

ing mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

## B. Whether Mt. Hawley is Entitled to Summary Judgment as Against Abraham Little Neck

The Plaintiff contends that because Abraham Little Neck did not provide notice of the occurrence until approximately seven months after learning of Diaz's accident, it failed to satisfy the contractual conditions precedent to coverage under the Policy, as a matter of law. Further, the Plaintiff argues that Abraham Little Neck lacked a valid excuse for failing to comply with the notice provision in the Policy. As a result, the Plaintiff contends it is entitled to a declaration that it is not obligated under the Policy to cover, defend, or indemnify Abraham Little Neck in connection with the September 22, 2008 accident or the underlying action.

For its part, Abraham Little Neck "does not oppose the facts described in Mt. Hawley's ... motion for summary judgment". (Abraham Br. at 1), but instead argues that New York Insurance Law § 3420(a)(5), which became effective on January 17, 2009, applies retroactively to the Policy issued on June 7, 2008. Abraham Little Neck contends that an application of Insurance Law § 3420(a)(5) would require the Plaintiff to show that it was prejudiced by Abraham Little Neck's alleged failure to provide timely notice prior to disclaiming coverage. The Court will address whether Abraham Little Neck failed to comply with the notice provision

of the Policy and the applicability of Insurance Law § 3420(a)(5) in turn below.

### 1. As to Abraham Little Neck's Compliance with the Notice Provision

The parties do not dispute that the September 22, 2008 accident constitutes an "occurrence" for which Abraham Little Neck had a contractual obligation to provide notice to the Plaintiff "as soon as practicable."

██ "Under New York law, compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy." *Sparacino v. Pawtucket Mut. Ins. Co.*, 50 F.3d 141, 143 (2d Cir.1995). "When a notice-of-occurrence provision requires the insured to notify the insurer 'as soon as practicable' after an occurrence, the insured must provide notice within a reasonable time under all of the circumstances." *U.S. Underwriters Ins. Co. v. Tauber*, 604 F.Supp.2d 521, 528 (E.D.N.Y. 2009). If an insured fails to provide timely notice in compliance with such a provision, the insurer may disclaim coverage. *Great Canal Realty Corp. v. Seneca Ins. Co., Inc.*, 5 N.Y.3d 742, 743, 800 N.Y.S.2d 521, 522, 522, 833 N.E.2d 1196 (2005) (holding that an insured's failure to satisfy the notice requirement constitutes "a failure to comply with a condition precedent which, as a matter of law, vitiates the contract."); *accord Lobosco v. Best Buy, Inc.*, 80 A.D.3d 728, 731, 915 N.Y.S.2d 305, 308–09 (2d Dep't 2011). Moreover, "[w]here there is no excuse or mitigating factor, relatively short time periods of delay are deemed unreasonable as a matter of law." *Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins. Co.*, 421 Fed.Appx. 52, 57 (2d Cir.2011) (holding that a three month delay was unreasonable); *see also U.S. Underwriter's Ins. Co. v. Ziering*, No. 06–

CV1130, 2009 WL 238562, at *6 (E.D.N.Y. Feb. 2, 2009) (collecting cases).

■■ However, New York law "recognize[s] that there may be circumstances that excuse a failure to give timely notice, such as where the insured has a good-faith belief of nonliability". *Great Canal Realty Corp.*, 5 N.Y.3d at 743, 800 N.Y.S.2d at 522, 833 N.E.2d 1196 (internal quotation marks and citation omitted); *accord Sparacino*, 50 F.3d at 143. "The insured's belief in nonliability 'must be reasonable under all the circumstances, and it may be relevant on the issue of reasonableness, whether and to what extent, the insured inquired into the circumstances of the accident or occurrence' ". *St. James Mech., Inc. v. Royal & Sunalliance*, 44 A.D.3d 1030, 1031, 845 N.Y.S.2d 83, 85 (2d Dep't 2007) (quoting *Sec. Mut. Ins. Co. of N.Y. v. Acker–Fitzsimons Corp.*, 31 N.Y.2d 436, 441, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972)). Notably, the burden is on the insured, not the insurer, to demonstrate the reasonableness of the excuse. *Courduff's Oakwood Rd. Gardens & Landscaping Co., Inc. v. Merchants Mut. Ins. Co.*, 84 A.D.3d 717, 718, 922 N.Y.S.2d 212, 214 (2d Dep't 2011).

■■ Furthermore, where, as here, the notice provision in a policy "mandates notice to the insurer as long as an occurrence 'may' implicate the policy", the decision to notify the insurer "requires only a 'reasonable possibility of such happening, based on an objective assessment of the information available' ". *U.S. Underwriters Ins. Co. v. Calandra*, No. 07–CV–4922, 2010 WL 1049295, at *4 (E.D.N.Y. March 19, 2010) (quoting *Christiania Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co.*, 979 F.2d 268, 276 (2d Cir.1992)). Also, where, as here, the insured is a business, "its delay in notifying the insurer will only be excused if a reasonable business person would have made the same decisions under the circumstances". *Ziering*, 2009 WL 238562, at *6 (internal quotation marks and citations omitted)

■ Although the issue of whether the insured had a good faith belief in nonliability, and whether that belief was reasonable are generally questions of fact for the factfinder, *see Royal & Sunalliance*, 44 A.D.3d at 1031, 845 N.Y.S.2d at 85, the issue of whether an insured's excuse for the delay is reasonable may be decided as a matter of law when "(1) the facts bearing on the delay in providing notice are not in dispute and (2) the insured has not offered a valid excuse for the delay." *State of New York v. Blank*, 27 F.3d 783, 795 (2d Cir.1994); *see also Tower Ins. Co. of N.Y. v. Alvarado*, 84 A.D.3d 1354, 1355, 923 N.Y.S.2d 717, 719 (2d Dep't 2011).

■ Here, Abraham Little Neck was indisputably aware of Diaz's accident, but did not notify the Plaintiff until approximately seven months after receiving the November 14, 2008 letter from Diaz's attorney. Such delay is legally untimely unless Abraham Little Neck can provide a reasonable excuse. *See, e.g., Tauber*, 604 F.Supp.2d at 528 ("In the absence of mitigating factors, courts have found delays as short as ten days to be unreasonable as a matter of law") (citing *Blank*, 27 F.3d at 796 (collecting New York and Second Circuit cases finding 10–day, 29–day, and 53–day delays to be unreasonable)); *Juvenex Ltd. v. Burlington Ins. Co.*, 63 A.D.3d 554, 882 N.Y.S.2d 47, 48 (1st Dep't 2009) (two month delay unreasonable); *Modern Cont. Constr. Co., Inc. v. Giarola*, 27 A.D.3d 431, 812 N.Y.S.2d 115 (2d Dep't 2006) (five month delay unreasonable).

As an initial matter, the Court notes that in opposition to the instant motion, Abraham Little Neck did not respond to the Plaintiff's argument that notice was untimely as a matter of law. Neverthe-

less, construing the record in the light most favorable to Abraham Little Neck, the Court will address whether there is a material issue of fact as to the reasonableness of Abraham Little Neck's belief of nonliability, as expressed in its November 18, 2008 letter to Diaz's attorney and its June 10, 2009 letter to its insurance broker. The Court also addresses whether the fact that Abraham Little Neck did not receive notice of the underlying action until approximately six months after it sent the November 18, 2008 letter to Diaz stating that it was not liable for his injuries, raises an material issue of fact as to the reasonableness of its belief that a claim would not be asserted against it.

"Courts have consistently held that a belief in a third party's superseding liability is unreasonable as a matter of law, and thus cannot excuse failure to provide timely notice." *Calandra,* 2010 WL 1049295, at *5 (collecting cases); *see, e.g., Eastern Baby Stores, Inc. v. Central Mut. Ins. Co.,* No. 07–CV–3890, 2008 WL 2276527, at *2 (S.D.N.Y. June 2, 2008), *aff'd* 337 Fed. Appx. 10 (2d Cir.2009) (holding that the insured's belief "that the accident in question would be covered by the company's 'workers [sic] compensation carrier' ... was unreasonable as a matter of law [because] [t]he contract required [the insured] to notify [the insurer] of any '*occurrence* which *may result* in a claim[ ]' [and] [t]he fact that [the insured] believed that another carrier would cover [the employee's] injuries has no bearing on this contractual obligation") (emphasis in original); *Heydt Contracting Co. v. Am. Home. Assur. Co.,* 146 A.D.2d 497, 499, 536 N.Y.S.2d 770, 772–73 (1st Dep't 1989) ("[P]laintiff's assumption that other parties would bear ultimate responsibility for its property loss is insufficient as a matter of law to excuse the more than four month delay in giving notice. The fact that a particular occurrence may not in the end result in a rip-

ened claim does not relieve the insured from advising the carrier of that event, and plaintiff's policy with defendant dictates that timely written notice be provided whenever a claim 'may' arise.").

In certain circumstances, courts have found that a genuine issue of material fact existed as to whether a general contractor had a good-faith belief of nonliability when the occurrence involved the employee of a sub-contractor. For example, in *North Country Ins. Co. v. Jandreau,* 50 A.D.3d 1429, 856 N.Y.S.2d 294 (3d Dep't 2008), the plaintiff insurer was similarly seeking a declaration that it was not required to defend or indemnify the defendant general contractor in an underlying action brought against the defendant by an employee of the defendant's subcontractor. The Third Department reversed the lower court's grant of summary judgment to the insurer, finding a genuine issue of fact existed as to the defendant's reasonable belief in nonliability. Similar to this case, "defendant explained that he did not contact plaintiff because [the employee] was working for the subcontractor and under the subcontractor's control and supervision at the time of the accident [and] [t]he subcontractor had provided proof of liability and workers' compensation coverage prior to commencing work...." *Id.,* 50 A.D.3d at 1430, 856 N.Y.S.2d at 296.

However, also relevant to the *Jandreau* court's determination that an issue of fact existed, were the following facts: (1) the subcontractor informed the defendant that it was submitting a claim to its insurer; (2) the defendant did not hear from the employee until the defendant was served with pleadings in the underlying action; and (3) the defendant submitted evidence of his knowledge of the facts of the accident and unfamiliarity with the "nuances of liability" to further support why he did not believe he was liable. *Id.,* 50 A.D.3d at 1430–31,

856 N.Y.S.2d at 296; *but see Brownstone Partners/AF & F, LLC v. A. Aleem Constr., Inc.*, 18 A.D.3d 204, 205, 796 N.Y.S.2d 41, 42 (1st Dep't 2005) ("Plaintiffs' proffered excuse for failing to notify defendant sooner of the accident, namely, that they relied upon the subcontractor's assurances that the subcontractor would bear responsibility for injuries caused by the reckless conduct of its employees, was insufficient to raise any triable issue as to whether plaintiffs had a reasonable, good-faith belief in their non-liability.").

By contrast, the uncontested facts in this case reveal that the attorney for Diaz not only contacted Abraham Little Neck about the accident on November 14, 2008, but it was also advised that Diaz anticipated commencing a suit against Abraham Little Neck for his injuries if the parties could not reach an amicable settlement. Accordingly, the threat of suit in the November 14, 2008 letter indicated that there was at least a "reasonable possibility of the subject policy's involvement". *McGovern–Barbash Assoc., LLC v. Everest Natl. Ins. Co.*, 79 A.D.3d 981, 983–84, 914 N.Y.S.2d 218, 221 (2d Dep't 2010) (internal quotation marks omitted) (holding that a contractor's failure to provide notice to its insurance carrier was unreasonable where the contractor received a letter from the injured party's attorney "warning them of the claim and specifically advising them to 'refer this letter to your insurance carrier immediately for further attention[ ]'" and yet did not notify the insurer until one month after the injured party commenced an action against it). Thus, regardless of whether Abraham Little Neck believed it might not ultimately be held responsible, the November 14, 2008 letter triggered Abraham Little Neck's obligation under the Policy to notify the Plaintiff that Diaz "may" assert a claim against it. *See In re St. James Mech., Inc.*, Bankr.No. 09–70124–reg, 2010 WL 3212037, at *6

(Bankr.E.D.N.Y. Aug. 9, 2010) ("It is not for the insured to make a legal conclusion that it would not be liable for a claim asserted against it, just to determine whether a claim might be asserted.").

Furthermore, Abraham Little Neck has not raised a triable issue with respect to whether it was reasonable for it to rely on the fact that, after it denied liability in the November 18, 2008 letter, Diaz did not immediately commence an action against it. Absent from the record is any evidence that Abraham Little Neck either investigated its potential liability, or that it exercised any due diligence in following up with Diaz with respect to whether Diaz still intended to assert a claim against it. *See Charter Oak Fire Ins. Co. v. Fleet Bldg. Maint., Inc.*, 707 F.Supp.2d 329, 335 (E.D.N.Y.2009) ("While an insured's good-faith belief in non-liability may, in some cases, provide an excuse for notification delay, determining whether that belief was reasonable requires examination of the circumstances surrounding the occurrence, including whether the insured took any steps to investigate the question of their liability.") (internal citation omitted).

Thus, the Court finds that Abraham Little Neck has failed to raise a triable issue of fact as to whether a reasonable business, required to notify its insurance company "as soon as practicable" of any occurrence that "may" lead to a claim, could have had a good-faith belief of nonliability under the facts and circumstances of this case. Nevertheless, Abraham Little Neck contends that summary judgment is inappropriate because, as required by Insurance Law § 3420(a)(5), the Plaintiff has failed to show it was prejudiced by the untimely notice. The Court disagrees.

### 2. *As to the Applicability of New York Insurance Law § 3420*

Prior to the enactment of Insurance Law § 3420(a)(5), an insurer did not

need to show prejudice before disclaiming coverage on the grounds that an insured failed to provide timely notice of an occurrence. *See Great Canal Realty Corp. v. Seneca Ins. Co., Inc.*, 5 N.Y.3d 742, 743, 800 N.Y.S.2d 521, 522, 833 N.E.2d 1196 (2005). However, in July of 2008, the New York Legislature amended New York Insurance Law § 3420 to add subsection (a)(5) requiring insurance companies to include a provision stating that untimely notice "shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide timely notice has prejudiced the insurer. . . ." N.Y. Ins. Law § 3420(a)(5) (McKinney 2011). Insurance Law § 3420(a)(5) is intended "to prohibit insurers from denying claims as untimely unless the failure to provide timely notice prejudiced the insurer." *Rockland Exposition, Inc. v. Great Am. Assur. Co.*, 445 Fed. Appx. 387, 389 n. 1, No. 10–4276–CV, 2011 WL 5176188, at *1 n. 1 (2d Cir.2011).

Insurance Law § 3420(a)(5), which became effective on January 17, 2009, applies only to policies that were "issued or delivered" on or after January 17, 2009. *See* An Act to Amend the Civil Practice Law and Rules and the Insurance Law, in Relation to Liability Insurance Policies § 8, 2008 N.Y. Sess. Laws 388 (McKinney 2008) ("This act shall take effect on the one hundred eightieth day after it shall have become a law, and shall apply to policies *issued or delivered* in this state on or after such date and to any action maintained under such a policy . . . .") (emphasis added). In this case, the Plaintiff issued the Policy to Abraham Little Neck on June 7, 2008 for the one-year period lasting from June 7, 2008 until June 7, 2009. Nevertheless, Abraham Little Neck asserts, without citation, that public policy considerations weigh in favor of applying Insurance Law § 3420(a)(5) retroactively, and that "[t]he New York Legislature has sent a clear message that forfeiture of coverage based on late notice technicalities should no longer be the law in New York." (Abraham Opp. at 2.)

This contention that Insurance Law § 3420(a)(5) is retroactive is not only contradicted by the legislatures inclusion of an effective date for the provision, but has been expressly rejected by New York state and federal courts alike. *See Sevenson Envtl. Servs., Inc. v. Sirius Am. Ins. Co.*, 64 A.D.3d 1234, 883 N.Y.S.2d 423 (4th Dep't 2009) ("[I]n addressing the issue of prejudice, the court erred in relying on amendments to Insurance Law § 3420 that apply only to policies issued on or after January 17, 2009. The policy in question was issued before that effective date, and thus '[t]he common-law no-prejudice rule applies to this case.' ") (alteration in original) (quoting *Briggs Ave. LLC v. Ins. Corp. of Hannover*, 11 N.Y.3d 377, 382, 870 N.Y.S.2d 841, 899 N.E.2d 947(2008)); *Safeco Ins. Co. of America v. Discover Property and Cas. Ins. Co.*, 2009 WL 436329, at *5 n. 3 (S.D.N.Y. Feb. 23, 2009) ("In July 2008 New York enacted legislation that would require a showing of prejudice. *See* N.Y. Ins. Law § 3420(a)(5) (McKinney 2008). The legislation is not retroactive and only applies to policies issued after January 17, 2009."); *see also Rockland Exposition, Inc.*, 445 Fed.Appx. at 389 n. 1, 2011 WL 5176188, at *1 n. 1 (denying application of Insurance Law § 3420(a)(5) where "[i]t is undisputed that the [insurance] policy was issued before [January 17, 2009]"); *accord Cambridge Realty Co., LLC v. St. Paul Fire Marine Ins. Co.*, 421 Fed.Appx. 52, 56 n. 6 (2d Cir.2011); *Pactrans Air & Seas, Inc. v. N.Y. Marine and Gen. Ins. Co.*, 387 Fed.Appx. 43, at 45 n. 2 (2d Cir.2010); *Ponok Realty Corp. v. United Nat'l Specialty Ins. Co.*, 69 A.D.3d 596, 596, 893 N.Y.S.2d 125, 127 (2d Dep't 2010); *Bd. of Managers of the 1235 Park Condo.*

v. Clermont Specialty Managers, Ltd., 68 A.D.3d 496, 891 N.Y.S.2d 340, 340 (1st Dep't 2009); cf. B & A Demolition and Removal, Inc. v. Markel Ins. Co., 818 F.Supp.2d 592, 594, No. 11–CV–572, 2011 WL 3511079, *2 (E.D.N.Y. Aug. 9, 2011) (Spatt, J.) (applying Insurance Law § 3420(a)(5) because the policy in dispute was delivered after January 17, 2009 despite being issued prior to that date).

Thus, because the Policy was issued on June 7, 2008, prior to Insurance Law § 3420(a)(5) taking effect on January 17, 2009, the Plaintiff is not required to show that it was prejudiced by Abraham Little Neck's untimely notice. Accordingly, the Plaintiff's summary judgment motion for a declaration that it is not obligated to cover, defend, or indemnify Abraham Little Neck with respect to the September 22, 2008 accident or the underlying action is granted.

### C.  Whether the Plaintiff is Entitled to Summary Judgment as Against Diaz

The Plaintiff seeks a declaration on summary judgment not only that it has no obligation to Abraham Little Neck, but also that it has no obligation to any other individual in connection with Diaz's accident, including Diaz himself. Despite previously submitting a letter in opposition to the Plaintiff's request for a summary judgment briefing schedule, defendant Diaz did not submit a response to the Plaintiff's motion for summary judgment.

■■■ However, the fact that Diaz did not respond to the motion for summary judgment does not mean that the Plaintiff is automatically entitled to summary judgment in its favor. Generally, if the adverse party does not respond to the summary judgment motion, "summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e). Nevertheless, "where the non-mov-

ing party 'chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'" Vermont Teddy Bear Co., Inc. v. 1–800 Beargram Co., 373 F.3d 241, 244 (2d Cir.2004) (quoting Amaker v. Foley, 274 F.3d 677, 681 (2d Cir.2001)).

■■■ One way that the moving party can meet its burden on an unopposed motion for summary judgment is where "the facts as to which there is no genuine dispute 'show that the moving party is entitled to a judgment as a matter of law.'" Champion v. Artuz, 76 F.3d 483, 486 (2d Cir.1996) (quoting Fed.R.Civ.P. 56(c)). In addition, a court can grant a movant summary judgment on an unopposed motion where the moving party, through the verified statements of fact contained in its Rule 56.1 Statement and the evidence in the record, has met its burden of showing the absence of a genuine issue for trial. See Vermont Teddy Bear Co., 373 F.3d at 244 (citing Giannullo v. City of N.Y., 322 F.3d 139, 143 n. 5 (2d Cir.2003)).

■■■ In both its moving and reply briefs in support of the instant motion, the Plaintiff only addresses its liability with respect to Abraham Little Neck. However, pursuant to Insurance Law § 3420(a)(3), even where the insured's notice is untimely, the injured party "can prevent the insurer from disclaiming coverage on the basis of the insured's failure to provide timely notice by notifying the insurer themselves." U.S. Underwriters Ins. Co. v. Tauber, 604 F.Supp.2d 521 (E.D.N.Y. 2009) (citing Maldonado v. C.L.-M.I. Props., Inc., 39 A.D.3d 822, 823, 835 N.Y.S.2d 335 (2d Dep't 2007)). In particu-

lar, Insurance Law § 3420(a)(3) states in relevant part, that "written notice by ... the injured person ... to any licensed agent of the insurer ... shall be deemed notice to the insurer." N.Y. Ins. L. § 3420(a)(3). Courts have interpreted Insurance Law § 3420(a)(3) to allow "an injured third party [to] seek recovery from an insured's carrier despite the failure of the insured to provide timely notice of the accident." *Gen. Accident Ins. Group v. Cirucci,* 46 N.Y.2d 862, 863–64, 414 N.Y.S.2d 512, 387 N.E.2d 223, 224–25 (1979); *accord Cont'l Ins. Co. v. Atlantic Cas. Ins. Co.,* 603 F.3d 169, 176 (2d Cir. 2010); *AXA Marine and Aviation (UK) Ltd. v. Seajet Indus. Inc.,* 84 F.3d 622, 626 (2d Cir.1996) (citing *Lauritano v. Am. Fidelity Fire Ins. Co.,* 3 A.D.2d 564, 162 N.Y.S.2d 553 (1st Dep't 1957), *aff'd,* 4 N.Y.2d 1028, 177 N.Y.S.2d 530, 152 N.E.2d 546 (1958)).

■ Although Insurance Law § 3420(a)(3) provides an injured party with the right to fulfill an insurance policy's notice obligation directly rather than relying on the insured, "the injured party has the burden of proving that he or she, or counsel, acted diligently in attempting to ascertain the identity of the insurer, and thereafter expeditiously notified the insurer". *Hanover Ins. Co. v. Prakin,* 81 A.D.3d 778, 780, 916 N.Y.S.2d 615, 618 (2d Dep't 2011). However, an injured party cannot satisfy this burden if it never actually gives notice to the insurance carrier. *See Garay v. Nat'l Grange Mut. Ins. Co.,* 117 Fed.Appx. 785, 787 (2d Cir.2004) ("Where, as here, the injured party has not actually exercised his right to provide independent notice under the statute, the insurer's disclaimer of coverage on the basis of the insured's late notice is effective against the injured party as well.").

■ Here, the only correspondence in the record before the Court from Diaz is the November 14, 2008 letter from Diaz's attorney to Abraham Little Neck requesting that Abraham Little Neck forward the information about Diaz's claim to its insurer. If this were the only attempt Diaz made to notify the Plaintiff, it would be insufficient as a matter of law. *See Tower Ins. Co. of N.Y. v. Jaison John Realty Corp.,* 60 A.D.3d 418, 419, 874 N.Y.S.2d 91, 92 (1st Dep't 2009) (holding that an injured parties letter to the insured advising him to "notify his insurer of the accident, and that if counsel did not hear from [the insured's] insurer or legal representative within 20 days, [the injured party] would commence an action" was insufficient under Insurance Law § 3420(a)(3) because the injured party "never attempted to ascertain the identity of ... [the] insurer and merely relied on correspondence to [the insured]"). However, because the Plaintiff did not address its potential obligation to Diaz in its Rule 56.1 statement, summary judgment submissions, or even the complaint in this action, the Court does not know whether Diaz ever notified the Plaintiff directly, and, if so, whether that notice was timely. Accordingly, the Court has no information upon which to base a finding that the Plaintiff has no obligation to cover, defend, or indemnify Diaz and therefore the Plaintiff's motion for summary judgment as against Diaz is denied, without prejudice.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that the Plaintiff's motion for summary judgment as to defendant Abraham Little Neck with respect to the first cause of action for breach of the notice provision in the Policy is granted, and it is further

**ORDERED,** that the Plaintiff's motion for summary judgment as to defendant

Diaz is denied, without prejudice, and it is further

**ORDERED,** that the parties are directed to appear before the Court on December 16, 2011 at 9:00 am for a status conference.

**SO ORDERED.**